UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SPANGLER, JENNINGS & DOUGHERTY, P.C., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 2:05 CV 108 |
| TERESA M. MYSLIWY, et al., | ) ) ) |
| Defendants. | ) |

**O R D E R**

This matter is before the court on a motion for summary judgment (*Pl.'s Mot. Sum. J.*, docket #24) and supporting memorandum (*Pl.'s Memo.*, docket #25) filed by plaintiff, Spangler, Jennings & Dougherty, P.C. ("Spangler"), a memorandum in opposition (*Defs.' Memo.*, docket #29) filed by defendants Teresa Mysliwy ("Teresa"), Dennis Mysliwy ("Dennis"), and Mysliwy P.C., (collectively "defendants"), and Spangler's reply in support of summary judgment (*Pl.'s Reply*, docket #30). For the following reasons, Spangler's motion for summary judgment is **DENIED**.

I.   BACKGROUND

The undisputed facts establish that Teresa is an attorney licensed to practice in Indiana. Teresa was employed with Spangler beginning in 1997. In January 2000, Teresa became a shareholder of Spangler, and in 2004 she became a member of Spangler's Board of Directors and was elected to Spangler's Executive Committee. In November 2004, Teresa was strongly considering leaving Spangler, and anticipated that some of

her clients would want her to continue to handle their cases. From November 2004 through January 2005, Teresa contacted several of Spangler's clients with whom Teresa had active cases, and informed them that she was leaving Spangler. Teresa explained to these clients that they had a choice as to whether they wished to have Spangler continue to handle their cases or whether they wished to have Teresa take their cases with her upon her departure from Spangler. Where a client expressed that they wanted Teresa to handle their cases, Teresa had them execute a directive stating this choice and directing Spangler to release their files to Teresa "at her new office."[1] At some point before Teresa resigned from Spangler, she printed out "File Lists" of client information including case names, account numbers, the "open amount" on each claim, the "open date" for the claim, and the current balance of the claim. Teresa copied all of Spangler's "e-data files" to CD-ROM and shipped the CD-ROMs to JST, a software vendor who was to convert the files to a Windows-compatible format. JST was to hold the CD-ROMS until Teresa received authorization from Spangler to take those e-files. Teresa gave her official notice of resignation to Spangler on January 24, 2005.

---

[1]The following clients executed directives with the respective dates:
State Farm Insurance Company - December 22, 2004
West Bend Mutual - January 11, 2005
Indiana Insurance Company - January 3, 2005
Wilbur Law Firm - January 14, 2005
Matek Law Offices - January 10, 2005
Standard Mutual Insurance - January 10, 2005
State Auto Insurance Company - January 11, 2005

Spangler filed this action on March 17, 2005. The amended complaint (docket #13) alleges twelve counts: violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), tortious interference with contract (Count IV), tortious interference with business relations (Count V), constructive fraud (Count VI), fraud (Count VII), computer trespass (Count VII), criminal conversion (Count IX), criminal deception (Count X), criminal trespass (Count XI), and replevin (Count XII). Spangler now seeks summary judgment as to liability only on Counts I, II, and III.

## II.     LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923, 111 S. Ct. 1317, 113 L. Ed. 2d 250 (1991). FEDERAL RULE OF CIVIL PROCEDURE 56(a) provides that "[a] party seeking to recover upon a claim....may....move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." FED. R. CIV. P. 56(a).

Motions for summary judgment are governed by FED. R. CIV. P. 56(c), which states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Where a claimant bears the burden of persuasion on an element, he cannot prevail on summary judgment without that element as a matter of law; it is not enough to show that a jury could conclude reasonably in favor of the movant. *See Liberty Lobby*, 477 U.S. at 250-53 (substantive burden of proof incorporated into summary judgment analysis); *Edison v. Reliable Life Insurance Co.*, 664 F.2d 1130, 1131 (9th Cir. 1981). Rather, a claimant seeking summary judgment must produce evidence that no reasonable jury could disregard. *See Edison v. Reliable Life Ins. Co.*, 664 F.2d 1130, 1131 (9th Cir. 1981); *see also* Louis, *Intercepting and Discouraging Doubtful Litigation: A Golden Anniversary View of Pleading, Summary Judgment, and Rule 11 Sanctions Under the Federal Rules of Civil Procedure*, 67 N.C. L. Rev. 1023, 1043 n. 141 (1989) (to obtain summary judgment, claimant must produce "proof so strong that no reasoning person may reject it").

In evaluating a motion for summary judgment, a court should draw all

4

reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997). It is well settled that summary judgment under FED. R. CIV. P. 56 should be granted "only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Central Nat'l Life Ins. Co. v. Fidelity and Deposit Co. of Md.*, 626 F.2d 537, 539-540 (7th Cir. 1980) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.   SUMMARY JUDGMENT MOTION

#### A.   Violation of Fiduciary Duty to Firm

Spangler moves for summary judgment on its breach of fiduciary duty claim, on the ground that Teresa's "predeparture solicitation of the firm's clients violated her fiduciary duty to the firm." *Pl.'s Memo.* at 9. The elements of breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) the breach thereof, and (3) injury caused thereby. *See* RESTATEMENT (SECOND) OF TORTS § 874 ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."). As a shareholder of Spangler, Teresa owed a fiduciary duty to both her fellow shareholders and to Spangler, and pursuant to that duty she was to refrain from "pre-departure surreptitious solicitation" of firm clients for her own personal gain. *Wenzel v. Hopper & Galliher, P.C.*, 779 N.E. 2d 30, 46-57 (Ind. Ct.

App. 2002) (citing *W & W Equipment Co. v. Mink*, 568 N.E. 2d 565, 570 (Ind. Ct. App. 1991), *trans. denied*, (internal quotation marks and citation omitted).

As recognized by the Indiana Court of Appeals in *Wenzel*, "pre-resignation surreptitious solicitation of firm's clients for a partner's personal gain . . . is actionable." 779 N.E. 2d 30, 47 (Ind. Ct. App. 2002) (citing *Graubard, Mollen, Dannett & Horowitz v. Moskowitz*, 86 N.Y.2d 112 (N.Y. 1995)) (internal quotation marks omitted). However, pre-departure solicitation is not always a breach of fiduciary duty. *Wenzel*, 779 N.E.2d, 47 at n. 7 (noting that the case that H&G relied on in arguing that pre-departure solicitation is always a breach of fiduciary duty - *Dowd &Dowd v.Gleason*, 181 Ill. 2d 460 (Ill. 1998) - did not establish such a bright-line rule, but rather provided that "proof of pre-termination solicitation of clients by the defendants *may* establish a breach of their fiduciary duties."). The *Wenzel* court found the following observations by the Court of Appeals of New York in *Graubard*, 86 N.Y.2d 112, relevant in determining whether pre-departure activities amount to a breach of fiduciary duty.

> [D]eparting partners have been permitted to inform firm clients with whom they have a professional relationship about their impending withdrawal and new practice, and to remind the client of its freedom to retain counsel of its choice. Ideally, such approaches would take place only after notice to the firm of the partner's plans to leave.
>
> At the other end of the spectrum, secretly attempting to lure firm clients (even those the partner has brought into the firm and personally represented) to the new association, lying to clients about their rights with respect to the choice of counsel . . .would not be consistent with a partner's fiduciary duties.

*Wenzel*, 779 N.E.2d at 47 (citing *Graubard*, 86 N.Y.2d at 120-121). The disagreement

between the parties is as to which end of the spectrum Teresa's actions fall on.

The parties generally do not dispute the facts underlying Spangler's breach of fiduciary duty claim - that is that prior to her departure from Spangler, Teresa, without Spangler's knowledge, informed clients of her impending departure, and ultimately several of these clients executed directives asking that Teresa retain their cases upon her departure. Spangler contends that the facts demonstrate that Teresa breached her duties as a fiduciary to her firm and her partners by surreptitiously soliciting Spangler's clients. Defendants, on the other hand, contend that Teresa was simply making permissible contact with her clients to inform them of her plans to leave Spangler and advise them that they had a choice in who should continue to handle their cases once she departed from Spangler.

Indeed it is not clear from the facts what Teresa was actually doing, and moreover the facts are susceptible to both Spangler's and defendants' interpretations. Thus, although there is no apparent dispute as to the underlying facts, whereas here there is a reasonable dispute as to the inferences to be drawn therefrom, summary judgment is inappropriate. *Central Nat'l Life Insurance*, 626 F.2d at 539. It remains for the factfinder to evaluate the evidence, observe and assess the credibility of the witnesses during direct and cross-examination, and to determine whether Teresa breached her fiduciary duty to Spangler and her partners. It is not enough for summary judgment purposes that the jury *could* conclude reasonably in Spangler's favor, *see Liberty Lobby*, 477 U.S. at 250-53, and accordingly, Spangler's motion for summary judgment on its

7

breach of fiduciary duty claim is **DENIED**.²

### B. Breach of Employment Agreement with Firm

Spangler moves for summary judgment on its breach of contract claim, arguing that "by [Teresa's] own admission," she breached her contract. *Pl.'s Memo.* at 11. Regardless of Spangler's contentions as to Teresa's admissions, in order to succeed on summary judgment, Spangler must prove the elements of its claim. That is, in order to recover on a breach of contract claim at this stage, Spangler must prove: (1) the existence of a contract, (2) breach of that contract, and (3) damage resulting from that breach. *Berkel & Co. Contrs. Inc. v. Palm & Assocs.*, 814 N.E. 2d 649, 655 (Ind. Ct. App. 2004) (citation omitted); *Rogier v. American Testing and Engineering Corp.*, 734 N.E. 2d 606, 614 (Ind. App. 2000). Spangler has moved for summary judgment on this claim, arguing that Teresa breached her contract by (1) soliciting clients, and (2) waiting before advising the firm of her plans to leave. *Pl.'s Memo.* at 11. Defendants do not

---

²In addition to its arguments regarding solicitation, Spangler has cited *Dowd & Dowd v. Gleason*, 181 Ill. 2d 460 (Ill. 1998) as "instruct[ing]" that "lying to partners about plans to leave also violates a partner's fiduciary duty" and that "a partner breaches her fiduciary duty by leaving on short notice and taking client files." *Pl.'s Memo.* at 10-11. A review of *Dowd* reveals that it does not create such bright-line rules, but rather suggests that these two factors "would not be consistent with a partner's fiduciary duties," and thus are relevant considerations when determining whether a departing partner has breached his fiduciary duties to his partners. *Dowd,* 181 Ill. at 476. In any event, defendants have offered evidence that Teresa did not lie to her partners about her plans to leave the firm, and that further that she provided a thirty-day notice of her resignation and further informed Spangler of her wishes to take client files. *See Defs.'Exh. B*. Thus, to the extent that Spangler is claiming Teresa breached her fiduciary duty by either lying to her partners or by leaving on short notice, there remain issues of material fact to be resolved by the factfinder.

meaningfully oppose Spangler's arguments,[3] but the court nevertheless denies summary judgment on Spangler's breach of contract claim for the following reasons.

It is undisputed that Teresa had an employment agreement with Spangler, and pursuant to that agreement she was not to do "anything that would be construed as adverse to the interests of [Spangler]." *Pl.'s Exh. A* (docket #29-2). However, as explained above, it remains to be determined by the factfinder whether Teresa's activites amounted to surreptitious solicitation; it logically follows that where the court cannot conclude as a matter of law that Teresa improperly solicited the clients, the court cannot conclude as a matter of law that Teresa breached her contract by improperly soliciting clients. As to Spangler's claim that Teresa breached her contract by "waiting for a more propitious moment to advise [Spangler] of her planned departure," Spangler has failed to present evidence as to how the firm was adversely affected by this alleged delay, and further how it suffered damage as a result of the delay. In other words, there is no proof of the second and third element of a breach of contract claim - breach of the contract and damages. Having failed to prove the elements of a breach of contract claim, as a matter of law Spangler cannot prevail on its motion for summary judgment on the

---

[3] Defendants, without explanation, argument, or citation to legal authority, assert that the provision which Teresa allegedly violated "is so broad as to be meaningless." *Defs.' Memo.* at 17. In the alternative, and again without explanation, argument, or citation to legal authority, defendants contend that "[e]ven if one were to construe the provision to bar advance notice to clients, the provision would be a prohibition unenforceable due to the departing lawyer's professional obligation to give notice [of departure plans], just as a non-competition covenant in the agreement would be unenforceable due to its violation of the ethics governing the practice of law." *Defs.' Memo.* at 18.

9

breach of contract claim. *Liberty Lobby*, 477 U.S. at 250-53. Accordingly, Spangler's motion for summary judgment on the breach of contract claim is **DENIED**.

### C. Violation of the Computer Fraud and Abuse Act

Spangler has moved for summary judgment on its claim that defendants violated the CFAA, a criminal statute which provides a civil remedy to "any person who suffers damage or loss by reason of a violation of this section."[4] 18 U.S.C. § 1030(g). Spangler's CFAA claim is based on Teresa's actions of accessing the firm's computer to print out file lists and client information, and copying all of Spangler's e-data files to CD-ROM. Spangler specifically cites § 1030(a)(5), arguing that "[t]he undisputed evidence establishes that [Teresa] accessed the firm's computer system, downloaded the firm's files and information, and used this information to covertly solicit the firm's clients." *Pls.' Memo* at 13. Defendants respond to Spangler's motion by arguing that the CFAA

---

[4]A claimant may sue under the CFAA only where "one of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)" is present. 18 U.S.C. § 1030(g). Section 1030(a)(5)(b) factors (i)-(v) factors are as follows:
> (i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $ 5,000 in value;
> (ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (iii) physical injury to any person;
> (iv) a threat to public health or safety; or
> (v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security.

Spangler has alleged that it suffered a loss consistent with the first factor.

claim "fails for at least three reasons," including: (1) Spangler has failed to prove a "loss" within the meaning of the CFAA, (2) Spangler's allegation that Teresa made "wrongful use" of the computer system "is false," and (3) "issues of facts preclude summary judgment on whether Mysliwy violated the statute." *Defs.' Memo.* at 18-19. Defendants do not, however, bother to explain what those issues are and how they "preclude summary judgment." Nevertheless, the court denies Spangler's motion for summary judgment on the CFAA claim for the following reasons.

Section 1030(a)(5)(A) of the CFAA has three subsections - (i), (ii), and (iii).[5] The elements of a cause of action under subsection (i) are: (1) the person or entity must intentionally cause the transmission of a program, information, code, or command; (2) the computer must be a "protected computer;" (3) the transmission must be without authorization; and (4) the transmission must cause damage. 18 U.S.C. § 1030(a)(5)(A)(i). The elements under subsection (ii) are: (1) the person or entity must intentionally access the computer; (2) the computer must be a "protected computer;" (3) the access must be without authorization; and (4) the access must recklessly cause damage. 18 U.S.C. § 1030(a)(5)(A)(ii). The elements under subsection (iii) are identical to those of subsection (ii), except that the access does not have to have been reckless. 18 U.S.C. §

---

[5]Spangler cites 18 U.S.C. § 1030(a)(5) without specifying a subsection. Further, for whatever reason, Spangler did not specify in its complaint which of the subsections of § 1030(a) defendants allegedly violated. A review of the statute makes clear that Spangler's second amended complaint could purport to allege a violation of subsection 1030(a)(5), where it alleges that defendants' access without authorization of Spangler's computer, caused Spangler to have to secure its network. *See Complaint* at 5 (docket #13).

1030(a)(5)(A)(iii). Notably, each of the three subsections require that the tortfeasor have caused "damage." The CFAA defines "damage" as the "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Thus, in order to succeed on a § 1030(a)(5)(A) claim, a claimant must prove that it suffered "impairment to the integrity or availability of data, a program, a system, or information." *See*, 18 U.S.C. § 1030(a)(5)(A)(i)-(iii); 18 U.S.C. § 1030(e)(8).

Spangler has seemingly overlooked the 18 U.S.C. § 1030(a)(5) damage element, and has completely failed to provide any proof of "damage." Spangler focuses its argument on the general CFAA § 1030(g) civil claim requirement, that a claimant suffer damages *or* loss. Spangler argues that "the undisputed evidence establishes that . . . the firm suffered a substantial *loss* on account of [Teresa's] violation [of the CFAA]." *Pls.' Memo* at 13-14 (emphasis added). According to Spangler, that loss resulted because Spangler "spent significant hours assessing what data and files [Teresa] had taken, what use she had made of the data and files, and contacting [Spangler's] clients to attempt to repair [Spangler's] attorney-client relationship that had been damaged by her activity." *Pl.'s Memo.* at 13. This assertion seems to fit neatly within the CFAA definition of "loss" which is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030. More importantly, this loss does not fit within the CFAA definition of "damage"

as it does not involve impairment to the integrity or availability of Spangler's programs, systems, or information, 18 U.S.C. § 1030(e)(8). As such, this loss is not the "damage" required for § 1030(a)(5) claims.[6] *See Resdev, LLC v. Lot Builders Ass'n*, 2005 U.S. Dist. LEXIS 19099 (D. Fla. 2005) (noting the dictionary meanings of "integrity" as "wholeness" or "soundness" in interpreting the damage element of the CFAA as requiring "some diminution in the completeness or usability of data or information on a computer system."); *Moulton v. VC3*, 2000 U.S. Dist. LEXIS 19916, 20-21 (D.Ga. 2000) (finding that time and money expended to investigate alleged CFAA violator's activities did not "fit the statutory definition of damage" where claimant agreed that the activity did not result in structural damage to their network and claimant's network "was never actually compromised and no program or information was ever unavailable" as a result of the activity).

Spangler, having failed to prove "damage," an essential element to a § 1030(a)(5) claim, is not entitled to judgment as a matter of law on its § 1030(a)(5) CFAA claim. *See Liberty Lobby*, 477 U.S. at 250-53. Accordingly, Spangler's motion for summary judgment on its § 1030(a)(5) CFAA claim is **DENIED**.

---

[6]One may bring a CFAA claim only where he has suffered damage or loss, 18 U.S.C. § 1030(g); therefore, a claimant could theoretically satisfy § 1030(g) and prove the damage element for a § 1030(a)(5) claim with the very same proof of "damage." At the same time, where a claimant satisfies § 1030(g) by showing only "loss," because "damage" is different from "loss" under the CFAA, that claimant will also have to prove "damage" in order to make a § 1030(a)(5) claim.

IV. **CONCLUSION**

For the foregoing reasons, Spangler's motion for summary judgment (docket #24) as to liability on Counts I, II, and III is hereby **DENIED**.

**SO ORDERED.**

**Enter**: March 31, 2006

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT